525 P.2d 870

STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, Plaintiff-Appellant and Cross-Appellee,

v.

T. E. MEARS, Jr., Ruby Mears, T. E. Mears III, and Carol M. Stephens, formerly Carol W. Mears, Defendants-Appellees and Cross-Appellants.

No. 9682.

Supreme Court of New Mexico.

Aug. 23, 1974.

David L. Norvell, Atty. Gen., Paul L. Bloom, Richard A. Simms, Special Asst. Attys. Gen., Santa Fe, for appellant.

Lynell G. Skarda, Clovis, for appellees.

## OPINION

MONTOYA, Justice.

The State of New Mexico, ex rel. S. E. Reynolds, State Engineer, brought suit against defendants T. E. Mears, Jr., his wife, son and daughter, setting forth two causes of action. For the sake of clarity, the parties will be referred to by their appearance in the district court.

Under count I, plaintiff sought to obtain a declaratory judgment declaring that defendants had no right to use irrigation water from the Portales Underground Water Basin, claiming that no water rights had ever been perfected for the lands in question. Under count II, plaintiff asks that defendants be enjoined permanently from using such water, alleging that the defendants had not irrigated the subject land for four consecutive years prior to June 1, 1965, without lawful excuse and, therefore, had lost the right to use water from the basin by abandonment, forfeiture, or non-use.

The defendants, by their answer, claim that declarations of water rights were filed

in accordance with applicable statutes and that the two wells from which water was applied to beneficial use upon their lands were drilled respectively in June 1939, and March 1947, long before the lands in question were brought into a water basin by the plaintiff. As a second affirmative defense to the first count, defendants allege that water from the two wells has been put to beneficial use upon their lands without waste and in accordance with good irrigation practices. The same defenses are asserted as to count II. Defendants also assert, as an affirmative defense to count II, that by reason of their declarations of water rights they were holders of a permit from the plaintiff and that plaintiff has not given notice required under § 75–11–8 (A), N.M.S.A., 1953 (Repl.Vol. 11, Pt. 2, 1968), and that, therefore, their rights cannot be forfeited. They further allege, by way of affirmative defense, that no notice being given, plaintiff cannot bring this action and that defendants be allowed to show reasonable cause for the delay or non-use and apply and obtain an extension of time under § 75–11–8(E), N.M.S.A., 1953 (Repl.Vol. 11, Pt. 2, 1968).

The case was tried to the court without a jury and judgment was entered adjudicating that the defendants have the right to apply sufficient water from two wells to irrigate pasture lands on 145 acres, but limiting defendants' use to one-acre foot per year on the 145 acres for native or permanent grasses only. The plaintiff appeals and the defendants cross appeal.

The findings pertinent to this appeal are as follows: That the defendants are the owners of the NE¼ Sec. 14, T. 2 S., R. 34 E., N.M.P.M., which quarter section lies within the Portales Underground Water Basin, as declared on May 1, 1950, by the plaintiff; that on June 1, 1950, the defendants' predecessor in interest T. E. Mears filed two declarations of owner of underground water right, both of which were stipulated into evidence; that the earlier declaration No. P–79 shows that the first well drilled by T. E. Mears, the father of T. E. Mears, Jr., was in June 1939, on the

SW¼ NE¼, Sec. 14, T. 2 S., R. 34 E., N. M.P.M., and was to irrigate the S½ NE¼ NE¼, a total of 100 acres in the south of the NE¼, and that the "Quantity of water appropriated and beneficially used 300 acre feet per annum for irrigation purposes [;]" that the later declaration No. P–95 shows that the second well drilled by T. E. Mears was in March 1947, on the NW¼ of the above section, and was to irrigate the west 45 acres of the N½ NE¼, a total of 45 acres, and that the "Quantity of water appropriated and beneficially used 135 acre feet per annum for irrigation purposes."

Other findings made by the trial court are as follows: Prior to the year 1967, none of the claimed 145 acres had been cultivated, although Love grass was planted on 20 acres thereof in 1952. In 1967 the defendants, through a tenant, had the acreage plowed up, leveled and planted with alfalfa and feed grain crops to prepare the land for planting grass to be irrigated as a so-called permanent pasture. Water from wells designated P–79 and P–95 was used to irrigate these crops. The amount of water used was in excess of the amount of water used prior to 1967. In 1970 the defendants planted, and have since maintained, permanent pasture grass on all of the 145 acres on which they claim water rights, except seven acres which remain in alfalfa. The use of the land for permanent pasture is substantially similar to the beneficial use to which the appropriated water was originally applied. The leveling of the land will result in more economical use of the appropriated water. The court also found that, except as to the amount of water appropriated to beneficial use, plaintiff had failed to sustain its burden of proof as placed upon it by law, and also that plaintiff had not given defendants notice and declaration of non-use since June 1, 1965.

The plaintiff sets forth two points as grounds for reversal: First, that the findings of fact and conclusions of law of the trial court do not comport with the dismissal of count I; and second, that the trial

court erred in concluding that there is no pro rata forfeiture of underground water rights.

The defendants cross-appeal contending first, that the trial court did not have jurisdiction to hear this case and, secondly, that the limitation with respect to the amount of water that could be used was not within the pleadings and not at issue.

We consider the contention that it was error for the trial court to dismiss count I of the amended complaint. That count sought a declaration by the court that defendants did not have perfected rights to use any water upon the lands in question.

■ In the course of the trial, evidence was adduced as to the use of the water for irrigation purposes by the defendants and their predecessors in title to the land. The declarations of a water right filed with the plaintiff state engineer were also admitted by stipulation. There was evidence on the part of the plaintiff that the land in question had neither been beneficially nor consistently irrigated. There was expert testimony submitted by plaintiff, including photogrammetric and stereoscopic interpretation of photographs of the land, and topographic maps seeking to establish the plaintiff's allegations. The trial court's findings and conclusions, in effect, declared the defendants' rights to irrigate pasture land on the 145 acres, but limited the annual duty of water to one-acre foot for the total acreage. In view of the conflicting evidence in the record, we are not prepared to hold the evidence in support of the trial court's findings was not substantial. We do, however, hold that the dismissal of count I of the amended complaint was error, since the issues actually litigated and decided were the ones raised by that count.

■ The next point raised in plaintiff's brief is that the lower court was incorrect as a matter of law in concluding that there was no pro rata forfeiture of underground water rights. The trial court concluded as follows:

"4. Under Sec. 75–11–8, NMSA 1953, as amended, water rights in underground basins are not forfeited, pro tanto, for partial non-user."

The above statute has never been precisely construed by this court as applied to non-use, or to partial non-use. In State v. McLean, 62 N.M. 264, 308 P.2d 983 (1957), we held that continuous non-use through waste for more than four years was the basis for forfeiting the appropriative right. That case involved a question of waste, as defined by the artesian well statutes.

In considering the rights of appropriators and the law regarding appropriation of waters from underground basins, in State v. McLean, supra, we said (62 N.M. 272–273, 308 P.2d 988) :

"Water appropriators and appropriations on each of the artesian basins of the state are numerous. The State is vitally concerned in every appropriation. The need for water is imperative, and often the supply is insufficient. Such conditions lead inevitably to many serious controversies, and demand from the state an exercise of its police power, not only to ascertain rights, but also to regulate and protect them. Regulation, however, is not confiscation. The same may be said as to adjudication. In order to deal with a problem, difficult and peculiar, if for no other reasons because of the vast number of parties and interrelated rights which may be involved, and the rule that no one has a right to use or divert water except for beneficial use is clearly indicated by the framers of our Constitution."

In considering forfeiture statutes, Vol. 2, Kinney on Irrigation and Water Rights, 2d Ed., § 1118 at 2021–2022, states:

"Although the general rule is that forfeitures are not favored in law, and even in cases of abandonment, the evidence must be clear and convincing that it was the intent of the owner to abandon the right before the Court will decree that the right was actually abandoned, it has

been the policy of the legislatures of the various States and Territories to pass enactments providing for the forfeiture of these rights for the failure or neglect to use them for a beneficial purpose. The very life of this arid country depends largely upon the use of all of the available water supply. Therefore, by the forfeiture of the rights which are claimed by certain parties, but who fail to use them, the ends of justice are met, and the water is made to do the greatest good to the greatest number. This is upon the correct theory that the continuance of the title to a water right is based only upon continuous user; and where a person claims a certain right which he does not use for a certain period of time, the statute declares that the right to the unused portion is forfeited and available for the appropriation of others. Where these provisions are enforced, it practically disposes of the 'dog in the manger' or the 'water hog.' "

However, in the instant case, the issue of forfeiture was not actually litigated. The plaintiff, in requested findings of fact, conceded that there existed some water rights in favor of the defendants, but requested a finding to establish only a right to irrigate 48.2 acres and an annual duty of water of only one-acre foot per annum for such acreage. Consequently, the forfeiture issue need not be decided. See § 75–11–8, supra. In the instant case the trial court properly found that the notice requirements of the said statute were not complied with.

We answer the question raised by point II on the pro tanto forfeiture of rights by holding that the findings leading to such a conclusion should be stricken as not being properly before the court, and the judgment of the district court, insofar as it is based upon such findings and conclusions, should be reversed. The only issues properly before the court were the existence of a water right owned by the defendants, and whether the same had been lost by non-use, forfeiture or abandonment. However, no forfeiture or abandonment was found by the court to have occurred.

We now consider the issue of jurisdiction raised by the cross appeal. The defendants allege that by reason of § 8, ch. 178, Laws 1949, the court lacked jurisdiction to hear the case. Defendants contend that the only statute authorizing an injunction is ch. 178, supra, codified as §§ 75–11–13 to 75–11–18, N.M.S.A., 1953 (Repl. vol. 11, Pt. 2, 1968), which provided for the regulation of the use of and drilling of wells for underground water in a declared underground basin.

Omitted from the codification, but cited in the footnote to § 75–11–18, supra, is § 8, ch. 178, Laws 1949, reading in part as follows:

"The provisions of this act shall not apply to wells commenced or drilled prior to the effective date hereof; * * *."

It would appear to us that the main purpose of this act was to regulate the drilling of wells in declared underground basins, the obtaining of permits therefor, and dealing primarily with well drilling operations after the effective date of the act. It further provided for the licensing of well drillers and for injunctive relief against owners of land who drilled wells in violation of the act, or who permitted drilling by any other than a licensed driller, or produced water from any well drilled in violation of the act. It also provided for injunctive relief against any person applying water from underground sources who had no valid right for the purpose to which the water was being applied. However, in § 4 of the said act the following provision relating to injunctive relief was made:

" * * *. This provision shall in no wise be construed to affect the existing right of a court of equity in the exercise of its general equity powers to grant relief to the state of New Mexico by injunction or otherwise."

It would seem to us that the last section of the act, stating that the wells drilled

prior to the effective date of such act are exempt from all of the provisions of the act, does not withdraw or destroy authority conferred upon the state engineer to seek injunctive relief to protect or conserve the public waters of the state. We have held that such authority exists independently of any statute.

In State v. Dority, 55 N.M. 12, 17, 225 P.2d 1007, 1010 (1950), we said:

"The public waters of this state are owned by the state as trustee for the people, Murphy v. Kerr, D.C., 296 F. 536; and it is authorized to institute suits to protect the public waters against unlawful use, or to bring any other action whether authorized by any particular statute, if required by its pecuniary interests or for the general public welfare, 49 A.J., 'States, Territories & Dependencies', Sec. 80. * * * "

See also State v. W. S. Ranch Company, 69 N.M. 169, 364 P.2d 1036 (1961).

In Clodfelter v. Reynolds, 68 N.M. 61, 68, 358 P.2d 626, 631 (1961), where the authority of the state engineer to grant a permit to drill wells in the Santa Fe area was questioned, we answered this contention by quoting the trial court's conclusion of law as follows:

" 'It is the function and duty of the State Engineer to regulate and supervise the appropriation, measurement and distribution of the public waters of the State and the apportionment thereof in accordance with the law, so as to prevent waste, prevent the improper location and drilling of wells and diversion of surface waters, to the end that said waters be conserved and be put to beneficial use as contemplated by law, and so as to protect the rights therein of appropriators in accordance with their priorities.' "

We therefore hold that the trial court had jurisdiction to decide the issues presented in this case.

■ The other contention raised by defendants' cross appeal is that limitation of the amount or duty of water was not within the pleadings and not at issue. As in other appropriation states, in New Mexico a water right is measured by actual beneficial use. Under art. XVI, § 3, New Mexico Constitution, "Beneficial use shall be the basis, the measure and the limit of the right to the use of water." In McBee v. Reynolds, 74 N.M. 783, 787–788, 399 P.2d 110, 113–114 (1965), we said:

"Since Yeo v. Tweedy, 34 N.M. 611, 286 P. 970, it has been settled in this state that waters of underground streams, channels, artesian basins, reservoirs and lakes, the boundaries of which may be reasonably ascertained, are public and subject to appropriation for beneficial use. They are included within the term 'water' as used in Art. XVI, §§ 1–3, of our Constitution. * * *"

■ Therefore, we can say that the measure of the right to appropriate water is actual beneficial use. In 5 Waters and Water Rights, § 408.2 at 76 (Robert Emmet Clark, Editor-in-chief 1972), the following is stated:

"The term 'duty' in relation to water use refers to quantity: the amount of water necessary for effective use for the purpose to which it is put under the particular circumstances of soil conditions, method of conveyance, topography, and climate. The legislation and the pragmatic tests applied by the courts reveal the extreme difficulty in expressing a precise definition or formula."

Originally, our statutes set up a formula describing limits of the amount of water to be allowed so as not to be in excess of the rate of one cubic foot of water per second for each seventy acres, or the equivalent thereof, delivered on the land. Section 77–517, N.M.S.A. 1941. However, that statute has been amended several times and as now in effect is § 75–5–17, N.M.S.A., 1953 (Repl. Vol. 11, Pt. 2, 1973 Pocket Supp.), which reads as follows:

"In the issuance of permits to appropriate water for irrigation or in the adjudication of the rights to the use of water for such purposes the amount al-

lowed shall be based upon beneficial use and in accordance with good agricultural practices and the amount allowed shall not exceed such amount. The state engineer shall permit the amount allowed to be diverted at a rate consistent with good agricultural practices and which will result in the most effective use of available water in order to prevent waste."

As stated in 5 Waters and Water Rights, supra, at 80:

"* * *. However, the calculus of duty still includes these essential factors: (1) amount of water diverted; (2) place of diversion as related to use; (3) amount necessary for particular crop or land; (4) season of the year; and (5) general irrigation or water-using practices followed in the area."

In the instant case, the evidence introduced clearly indicates that the nature and extent of the water rights in question were being litigated and, therefore, the question of the water rights involved necessitated the determination of the "duty" of water. In effect, the "duty" of water is that amount of water necessary for the successful cultivation of the land and it would vary with the consideration of the various factors of "duty" as set forth above. In determining the extent of the water rights, the trial court concluded as follows:

"2. The declaration of beneficial use filed by defendants' predecessor in title are prima facie evidence of the truth of their contents. The plaintiff has not overcome this prima facie evidence, except as to the amount of water appropriated to beneficial use by the declarant."

The trial court considered the extent and type of use of the water in the instant case, the type of crop being irrigated, resolved the conflicts in the evidence, and concluded:

"6. The defendants are entitled to a declaratory judgment adjudicating them to have the right to apply sufficient water from wells P-79 and P-95 to irrigate pastures on the lands described in said declaration of beneficial use, not to exceed one-acre foot per acre per annum."

We cannot say that the trial court, based on the evidence before it and the issues as framed by the pleadings, erred in making its determination and declaration of the extent of the water rights to which the defendants are entitled.

Accordingly, the judgment of the trial court is affirmed, except as to its dismissal of count I of the amended complaint and its conclusions as to pro tanto forfeiture, and the cause is remanded to the trial court for the entry of its decision and judgment in conformity with the views herein expressed.

It is so ordered.

McMANUS, C. J., and MARTINEZ, J., concur.