2006-NMCA-048

133 P.3d 866

Peter SMITH, Barbara Smith, Patricia Stillman Trust, Guy Stillman Trust, and GWP Investments, INC., a New Mexico Corporation, Plaintiffs–Appellees,

v.

CITY OF SANTA FE, Defendant–Appellant.

No. 24,801.

Court of Appeals of New Mexico.

Feb. 16, 2006.

Certiorari Granted, No. 29,712, April 28, 2006.

Corrected May 10, 2006.

Sommer, Udall, Hardwick, Ahern & Hyatt, L.L.P., Karl H. Sommer, Santa Fe, NM, for Appellees.

Sutin, Thayer & Browne, P.C., Germaine R. Chappelle, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} This case presents us with procedural and substantive issues regarding the validity of a 1999 Santa Fe ordinance as it relates to the drilling of domestic wells within the city limits. On cross-motions for summary judgment, the district court determined, as a matter of law, that the City of Santa Fe (City) did not have the authority to prohibit the drilling of wells within the city's corporate limits. We hold that the City did have the authority to prohibit domestic wells within the city limits; therefore, we reverse the district court.

## I. BACKGROUND

{2} The parties do not dispute any material facts. The City became a home rule charter municipality in 1997. In 1999, the City Council passed the Domestic Well Ordinance, Ordinance No. 1999-3, codified at Santa Fe, N.M., Code [hereinafter Santa Fe Code] ch. XXV, § 1.10 (1999). This ordinance required any person wishing to drill a well within the City's municipal water service area to apply for a domestic well permit and prohibited the drilling of new domestic wells when the well applicant's property boundary was located within 200 feet of the City's water distribution main. *Id.* In 2001, Plaintiffs Peter Smith, Barbara Smith, and GWP Investments (together referred to as Smiths) and Plaintiffs Patricia Stillman Trust and Guy Stillman Trust (together referred to as Trusts) applied for domestic well permits from the Office of the State Engineer (OSE), pursuant to NMSA 1978, § 72-12-1 (1998). The OSE granted the permits, and the City advised Plaintiffs that they were also required to obtain a permit from the City. The proposed wells were to be drilled on Plaintiffs' properties located within the city; all of the Plaintiffs were water customers of the City.

{3} In February 2001, Smiths filed applications for domestic well permits from the City. The permits were denied because the boundary of Smiths' property was located within 200 feet of the City's water distribution lines. Smiths followed the City's appeal process and appealed the decision to the City Manager, then to the Public Utilities Committee, and finally to the City Council; all appeals were denied. Trusts, however, did not apply for a City permit because they were informed, through their legal representatives, that the application would be denied.[1]

{4} In January 2002, Smiths and Trusts filed a complaint for declaratory relief, asking the district court to declare that the City has no authority to deny the applications or to prohibit Plaintiffs from drilling wells on their properties. Trial was vacated; instead, the parties entered a stipulated order of facts and briefing schedule. After a hearing on the parties' motions for summary judgment, the district court granted Plaintiffs' motion and denied the City's motion. The court ruled that it had jurisdiction to hear Plaintiffs' declaratory judgment action, that Trusts were not required to exhaust administrative remedies and were therefore proper parties to the action, and that the City was preempted from enacting the Domestic Well Ordinance and had no home rule or other statutory power authorizing such enactment. The City appeals this ruling.

## II. DISCUSSION

### A. Procedure and Jurisdiction

{5} The City, in its first argument, contends that the district court had no jurisdiction to consider the complaint for a declaratory judgment because (1) Trusts failed to exhaust their administrative remedies by not applying for a drilling permit and (2) Smiths, who did exhaust their administrative remedies, were limited to appellate review by petition for writ of certiorari, as set forth in Rule 1–075 NMRA (regarding writs of certiorari when there is no statutory right to appeal or review). We need not decide these issues because however we decide them will make no difference to the outcome of this appeal; on the merits, we conclude that the City did in fact have the authority to enact the Domestic Well Ordinance and could thus prohibit Plaintiffs from drilling a domestic well. We acknowledge that the special concurrence and dissent relies on cases supporting a determination that jurisdiction does not lie in this case. There is other authority, however, that indicates an ordinance may be challenged by declaratory action, as well as by administrative appeal. *See Pan Am. Petroleum Corp. v. El Paso Natural Gas Co.*, 77 N.M. 481, 487, 424 P.2d 397, 401 (1966) (holding that an action for declaratory judgment is not barred because the plaintiff failed to exhaust administrative remedies if the question is one of law and not fact); *Moriarty Mun. Sch. v. Pub. Sch. Ins. Auth.*, 2001-NMCA-096, ¶¶ 1, 10, 34, 131 N.M. 180, 34 P.3d 124 (holding that the school could sue the insurance authority in contract, even though it failed to timely file a petition for writ of certiorari under Rule 1–075); *see also* NMSA 1978, § 44–6–2 (1975) ("[D]istrict courts within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed."); NMSA 1978, § 44–6–4 (1975) ("Any person ... whose rights ... are affected by a ... municipal ordinance ... may have determined any question of construction or validity arising under the ... ordinance ... and obtain a declaration of rights ... thereunder."); NMSA 1978, § 44–6–14 (1975) (noting that the Declaratory Judgment Act is remedial and should be liberally construed and administered to serve its purpose, that is, "to afford relief from uncertainty and insecurity with respect to rights"); *cf. Grand Lodge of*

---

1. Also in 2001, the legislature enacted NMSA 1978, § 3–53–1.1 (2001), which specifically authorized municipalities to enact ordinances restricting the drilling of new domestic water wells, as long as (1) the property line of the applicant is within 300 feet of the municipal water distribution lines, (2) the property is located within the municipal boundaries, and (3) the property is not zoned agricultural. This statute became effective on June 15, 2001. It is not applicable to this case. In 2004, the City Council amended the Domestic Well Ordinance in Ordinance No. 2004–7, § 1. *See* Santa Fe Code ch. XXV, § 1.10 (2004). The amended ordinance similarly does not apply to this case.

*Ancient & Accepted Masons of N.M. v. Taxation & Revenue Dep't*, 106 N.M. 179, 181, 740 P.2d 1163, 1165 (Ct.App.1987) (concluding that declaratory judgment action is not available when there is a complete, *statutory* remedy, "obviously intended to be exclusive"). While the question of jurisdiction is debatable, a full analysis of this issue is not necessary because our disposition on the merits fully resolves the case. *See Taos Mun. Sch. Charter Sch. v. Davis*, 2004-NMCA-129, ¶ 6, 136 N.M. 543, 102 P.3d 102 ("Because a decision on this jurisdictional issue is not necessary in light of our ruling on the merits ..., we will address the merits ... and leave the complex and interesting issue of jurisdiction to another day."). Accordingly, we assume, without deciding, that the district court had jurisdiction to entertain Plaintiffs' declaratory judgment action, and we now explain our analysis of the merits of this case. *See id.*

## B. Validity of the Ordinance

{6} The City's substantive argument goes to the validity of the Domestic Well Ordinance. The City maintains that its home rule powers and police powers provide the requisite authority for enacting the ordinance. Plaintiffs contend that any authority relied upon by the City is expressly denied or preempted by state law.

### 1. Standard of Review

{7} Summary judgment is reviewed de novo. *McGarry v. Scott*, 2003-NMSC-016, ¶ 5, 134 N.M. 32, 72 P.3d 608. In the present case, we specifically determine whether a municipality has authority to enact an ordinance pursuant to home rule; this requires interpretation of a constitutional amendment and statutes, both questions of law, which are reviewed de novo. *New Mexicans for Free Enter. v. City of Santa Fe*, 2006-NMCA-007, ¶ 11, 138 N.M. 785, 126 P.3d 1149.

### 2. Home Rule Authority and Its Limitations

{8} In the Home Rule Amendment, N.M. Const. art. X, § 6, the New Mexico Constitution provides municipalities with the right to adopt a charter and thereby "exercise all legislative powers ... not expressly denied by general law or charter." N.M. Const. art. X, § 6(D). Although the power granted under home rule is broad, limitations do exist. *New Mexicans for Free Enter.*, 2006-NMCA-007, ¶¶ 16–17, 138 N.M. 785, 126 P.3d 1149; *see also* N.M. Const. art. X, § 6(E) ("The purpose of this section is to provide for maximum local self-government. A liberal construction shall be given to the powers of municipalities.").

{9} Limitations on home rule authority are evaluated in a two-step process. *State ex rel. Haynes v. Bonem*, 114 N.M. 627, 631, 845 P.2d 150, 154 (1992). In the first step, a court asks whether a state law is a "general law," *id.*, that is, a law that applies generally throughout the state, relates to a matter of statewide concern, and impacts inhabitants across the entire state. *New Mexicans for Free Enter.*, 2006-NMCA-007, ¶ 18, 138 N.M. 785, 126 P.3d 1149 (concluding that "the Minimum Wage Act is a general law"). Section 72–12–1, regarding permits for domestic wells, applies generally throughout the state. Moreover, the permitting of domestic wells is a statewide concern because access to water is a necessity for all inhabitants of the state. Thus, we conclude that Section 72–12–1 is a general law.

{10} In the second step, we determine whether the general law "expressly denies" the City's power to prohibit the drilling of domestic wells permitted by the OSE. *Haynes*, 114 N.M. at 631, 845 P.2d at 154; *see also New Mexicans for Free Enter.*, 2006-NMCA-007, ¶ 19, 138 N.M. 785, 126 P.3d 1149. The Court must consider (a) whether the statute "evinces any intent to negate such municipal power," *New Mexicans for Free Enterprise*, 2006-NMCA-007, ¶ 19, 138 N.M. 785, 126 P.3d 1149; (b) whether the effect of the statute implies "a clear intent to preempt that governmental area from municipal policymaking," *id.*; *see also Haynes*, 114 N.M. at 634, 845 P.2d at 157 ("[W]ords or expressions which are tantamount or equivalent to such a negation are equally effective."); and (c) whether the grant of authority to another governmental body "makes its exercise by [the City] so inconsistent with

the [statute] that it is equivalent to an express denial." *In re Generic Investigation into Cable Television Servs.*, 103 N.M. 345, 351, 707 P.2d 1155, 1161 (1985).

### a. Intent to Negate Municipal Power

■ {11} We look at the language of the statute and the permit to determine whether the statute evinces an intent to negate municipal authority to act in a particular area. Plaintiffs argue that the City's authority to deny a permit to drill is prohibited by "state water law and the terms of the [OSE] permit which specifically authorized Plaintiffs' well to be drilled." Although Plaintiffs do not use the language from the home rule cases, it appears they contend that the language of Section 72–12–1, coupled with that of the OSE permit, evinces an intent to negate municipal power to prohibit drilling. *See New Mexicans for Free Enter.*, 2006-NMCA-007, ¶ 19, 138 N.M. 785, 126 P.3d 1149. We disagree.

{12} We turn our attention to the language of Section 72–12–1, which designates all underground waters as "public waters" and provides the state engineer with authority to issue a permit when an application is made for domestic use:

> [A]ny person ... desiring to use ... waters ... for irrigation of not to exceed one acre of noncommercial trees, lawn or garden[ ] or for household or other domestic use shall make application to the state engineer.... [T]he state engineer *shall* issue a permit to the applicant to so use the waters applied for[.]

Section 72–12–1(A) (emphasis added).

{13} In interpreting the statute and its effect on home rule authority, we look to the statute's plain language. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating that the primary indicator of legislative intent is the plain language of the statute). Our Supreme Court considered whether the language of a statute negated home rule authority in *Westgate Families v. County Clerk*, 100 N.M. 146, 148, 667 P.2d 453, 455 (1983). The Court held that the word "only" in a statute precluded zoning by referendum. *Id.* The statute provided that

a zoning ordinance "shall be passed *only* by a majority vote of all the members of the board." NMSA 1978, § 3–21–14(C) (1981) (emphasis added). The Court concluded that this language expressly denied the municipal power to zone by referendum because the statute expressly provided for zoning by representative bodies. *Westgate Families*, 100 N.M. at 148, 667 P.2d at 455.

{14} We recognize that both Section 72–12–1(A) and the statute construed in *Westgate Families* contain the mandatory word "shall." *Compare* § 72–12–1(A) ("[T]he state engineer shall issue a permit[.]"), *with* § 3–21–14(C) (providing that a zoning ordinance "shall be passed only by a majority vote"). However, we note the conspicuous absence of the word "only" in the statute governing domestic well permits. *See High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (noting that the court "will not read into a statute or ordinance language which is not there" (internal quotation marks and citation omitted)). We conclude that the statute does not evince an intent to negate home rule authority. *See New Mexicans for Free Enter.*, 2006-NMCA-007, ¶¶ 19, 20, 138 N.M. 785, 126 P.3d 1149 (concluding that the word "all" within the Minimum Wage Act was not a limitation on municipal authority to set a higher minimum wage); *see also Apodaca v. Wilson*, 86 N.M. 516, 521, 525 P.2d 876, 881 (1974) (discussing the statutory prohibition on municipal authority to tax in NMSA 1978, Section 3–18–2 (1980), as an example of an express denial of home rule authority), *modified as recognized by Haynes*, 114 N.M. at 631–32, 634, 845 P.2d at 154–55, 157.

{15} Further, the language of the OSE permit does not negate such authority. *See Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995) (stating that a reviewing court accords some deference to an agency's interpretation of the statute that governs the agency). Without citing to any regulations on which the permit relies, Plaintiffs extract phrases from within the permit and assert that these phrases prohibit the City from denying a permit to drill a domestic well. Specifically, Plaintiffs contend that certain

language in the permit, such as "application is approved" and the "well shall be drilled," precludes the City's authority to deny a permit to drill. Plaintiffs pluck this language out of context to make their argument.

{16} The permit reads as follows: "This *application is approved* for the use indicated, subject to all general conditions and to specific conditions listed above." (Emphasis added.) The conditions and approvals listed within the permit include Condition H: "The amount and uses of water permitted under this Application are subject to such limitations as may be imposed by . . . lawful municipal and county ordinances which are more restrictive than applicable State Engineer Regulations and the conditions of this permit." We conclude that the plain meaning of the permit language of approval, read together with Condition H, is clear and unambiguous—the applicant may drill a well if he or she is not limited by a more restrictive municipal ordinance. *See Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153 ("[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)); *cf. High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (noting that when several sections of a statute are involved, we read them together so that all parts are given effect). Condition B provides that the *"well shall be drilled* by a driller licensed in the State of New Mexico." (Emphasis added.) We do not interpret the language of this condition, as suggested by Plaintiffs, to be a mandate that Plaintiffs must be allowed to drill a well. Rather, we interpret this language to be a limitation on who may actually drill the well for the permittee. Plaintiffs argue that the permit rests on regulations, but Plaintiffs do not cite to these regulations. Therefore, we rely on the permit's language, read as a whole, which clearly contemplates municipal authority to regulate in this area. We conclude that the language of the statute, as interpreted by the OSE in its permit, does not evince an intent to negate municipal authority to deny drilling of domestic wells.

**b. Statutory Implication of Intent to Preempt**

{17} We examine the effect of the statute to determine whether legislative intent to preempt is implied. Plaintiffs argue that municipal authority to prohibit domestic wells is implicitly preempted because the ordinance conflicts with the "contents, purposes, or pervasive scheme of the statute." *See San Pedro Mining Corp. v. Bd. of County Comm'rs*, 1996-NMCA-002, ¶ 9, 121 N.M. 194, 909 P.2d 754. Plaintiffs contend that the City's denial of a permit to drill would "frustrate or violate established public policy." *See City of Albuquerque v. N.M. Pub. Regulation Comm'n*, 2003-NMSC-028, ¶ 7, 134 N.M. 472, 79 P.3d 297 (discussing limitations on home rule authority). "[W]hen two statutes that are governmental or regulatory in nature conflict, the law of the sovereign controls." *Casuse v. City of Gallup*, 106 N.M. 571, 573, 746 P.2d 1103, 1105 (1987) (holding that the statute requiring members of governing bodies to come from single-member districts clearly intended to preempt a municipality's right to have at-large elections). We ask whether the effect of the statute implies "a clear intent to preempt [a] governmental area from municipal policy-making." *New Mexicans for Free Enter.*, 2006-NMCA-007, ¶ 19, 138 N.M. 785, 126 P.3d 1149; *see also ACLU v. City of Albuquerque*, 1999-NMSC-044, ¶¶ 10, 13, 15, 128 N.M. 315, 992 P.2d 866.

{18} In *ACLU*, our Supreme Court held that the legislature clearly intended to preempt municipal authority to criminalize the behavior of juveniles. 1999-NMSC-044, ¶ 1, 128 N.M. 315, 992 P.2d 866. This was the case because the Delinquency Act comprehensively and exhaustively addressed juvenile delinquency and the local ordinance attempted to expose juveniles to criminal punishment, including a fine of up to $500 and imprisonment of up to ninety days. *Id.* ¶¶ 2, 10–15. This punishment effectively subjected a juvenile to criminal sanctions, contrary to the Delinquency Act; therefore, the ordinance "would circumvent and thereby frustrate the [l]egislature's intent to . . . uniformly enforce laws of a penal nature against [children]." *Id.* ¶ 13. In the present case,

Plaintiffs are correct that the domestic well exception in Section 72–12–1 mandates application to the OSE by a person seeking to drill a domestic well. However, this basic premise does not mean that any local regulation of domestic wells is therefore inconsistent with the state scheme. Our reading of the statute is that it is intended to ensure that the OSE is simply aware of new domestic wells and that they are drilled by a qualified person. This application to the OSE, which results in an automatic and unrestricted permit, does not approximate a comprehensive or exhaustive regulation of such wells. Additional regulation at the local level does not inhibit the notice-oriented mandates of Section 72–12–1. Thus, local regulation, in our view, is consistent with the state statute and, unlike the situation in *ACLU*, does not circumvent or frustrate the policy established by state law.

{19} Both parties cite to *San Pedro*. We first note that *San Pedro* does not construe home rule authority. However, we find its discussion of implied preemption instructive. In *San Pedro*, this Court focused on the purposes of the New Mexico Mining Act, its regulations, and the county ordinance, and the Court determined that the ordinance was not preempted. 1996–NMCA–002, ¶ 10, 121 N.M. 194, 909 P.2d 754. The state law did not preempt the county ordinance because the ordinance addressed concerns that were not a focus of the state law. *Id.* ¶¶ 10, 11, 14. In particular, the primary focus of the state law was to minimize the damage to the land being mined, whereas the focus of the county ordinance was on "development issues with which local governments are traditionally concerned, such as traffic congestion, increased noise, possible nuisances . . ., compatibility . . . with the use made of surrounding lands, appropriate distribution of land use and development, and the effect . . . on surrounding property values." *Id.* ¶ 12. Thus, we concluded there was "room for concurrent jurisdiction and regulation" in those aspects of the regulated activity that were left unaddressed by the state law. *Id.*

{20} As in *San Pedro*, we find room in the present case for concurrent jurisdiction and regulation. As we have noted, the domestic well exception is primarily aimed at informing the OSE of new domestic wells. Section 72–12–1. There are no statutory requirements that must be met before a domestic well application is approved. *See id.* The application requires information regarding the location of the well and the use of water, as well as information regarding the driller and the technical specifications of the well. There is no evidence of intent to regulate the use of domestic wells in areas of concern to a municipality, such as depletion of the local aquifers, impact on the quality of the local water, and reliability of the water system. Clearly, state law and the City's ordinance regarding domestic wells address different areas of concern. Because there is room for concurrent jurisdiction, Section 72–12–1 and the OSE permit do not preempt the City's power to prohibit the drilling of wells when the applicant can be served by the municipal water system.

### c. Local Regulation Barred by Grant of Authority to Another Governmental Body

{21} Plaintiffs contend that the state's plenary control of water and the grant of authority to the state engineer expressly deny the use of home rule authority to prohibit drilling a domestic well. *State ex rel. State Game Comm'n v. Red River Valley Co.*, 51 N.M. 207, 273, 182 P.2d 421, 462 (1945) ("[F]ollowing the act of 1877, if not before, all nonnavigable waters then a part of the public domain became publici juris, subject to the plenary control of the designated states[.]" (internal quotation marks and citation omitted)). Plaintiffs assert that the grant of authority to the state engineer "makes its exercise by [the City] so inconsistent with the [law] that it is equivalent to an express denial." *See In re Generic Investigation into Cable Television Servs.*, 103 N.M. at 348, 351, 707 P.2d at 1158, 1161 (concluding that the constitutional grant of authority to the Commission for "fixing, determining, supervising, regulating and controlling all charges and rates of . . . *transmission companies* . . . and of determining any matters of public convenience and necessity relating to such facilities" expressly denied municipal home rule authority over cable companies (internal quotation

marks and citation omitted)); *see also N.M. Pub. Regulation Comm'n*, 2003–NMSC–028, ¶ 10, 134 N.M. 472, 79 P.3d 297 (holding that local governments are precluded from requiring utilities to pay the expense of undergrounding on public highways because the legislature delegated the power to a state agency). We do not agree.

{22} In *New Mexico Public Regulation Commission*, our Supreme Court concluded that a grant of authority was equivalent to an express denial when "[t]he [l]egislature delegated the power to provide for the relocation of utility facilities within a public highway to the State Highway and Transportation Department." *Id.* ¶¶ 8, 10 (internal quotation marks and citation omitted); *see In re Generic Investigation into Cable Television Servs.*, 103 N.M. at 351, 707 P.2d at 1161. The Department could provide for relocation if it made a "finding that the action provided for is necessitated by highway improvement." *N.M. Pub. Regulation Comm'n*, 2003–NMSC–028, ¶ 10, 134 N.M. 472, 79 P.3d 297 (internal quotation marks and citation omitted). The Department was further directed "to promote the public interest in the highway improvement without undue cost or risk and without impairment of utility service." *Id.* (internal quotation marks and citation omitted). The legislature's grant of authority to the Department made the municipal body's exercise of that authority "so inconsistent with the [law] that it [was] equivalent to an express denial" when the legislature delegated a definite power to be exercised by a specific governmental entity and provided detailed guidelines and a specific purpose for the Department's discretionary authority. *See In re Generic Investigation into Cable Television Servs.*, 103 N.M. at 351, 707 P.2d at 1161. We find *New Mexico Public Regulation Commission* distinguishable from our case.

{23} The authority granted to the state engineer regarding domestic wells in Section 72–12–1 is limited and without discretion. *See* § 72–12–1(A) (directing a prospective domestic well owner to apply to the state engineer and directing the state engineer to issue a permit). We conclude that this limited grant of authority in regard to domestic wells does not rise to the level of an express denial of home rule authority to act in this area.

{24} Plaintiffs also rely on *State ex rel. Reynolds v. Mears*, 86 N.M. 510, 515, 525 P.2d 870, 875 (1974), to assert that the grant of authority to the state engineer expressly denies the City's home rule power to prohibit the drilling of a domestic well. *See id.* ("It is the function and duty of the State Engineer to regulate and supervise the appropriation, measurement and distribution of the public waters of the State and the apportionment thereof in accordance with the law, so as to prevent waste, prevent the improper location and drilling of wells ..., to the end that said waters be conserved and be put to beneficial use as contemplated by law, and so as to protect the rights therein of appropriators in accordance with their priorities." (internal quotation marks and citation omitted)). *Mears* is distinguishable from the case at hand. In *Mears*, our Supreme Court specifically addressed wells permitted for beneficial use under the doctrine of appropriation. *Id.* at 512, 525 P.2d at 872. *See generally* NMSA 1978, § 72–12–3 (2001) (identifying the information necessary for an application to appropriate water for beneficial use). However, the circumstances here present a question of municipal authority over domestic wells, pursuant to Section 72–12–1. Thus, we conclude that *Mears* is not applicable to the facts presented in this case.

{25} We also note that the legislature has expressly provided for municipal regulation and conservation of water. We read Section 72–12–1 together with the remainder of the municipal water statutes and the express grants of power to municipalities regarding water. *In re Estate of Holt*, 95 N.M. 412, 414, 622 P.2d 1032, 1034 (1981) ("It is a familiar rule of statutory construction that all of the provisions of a statute, together with other statutes in pari materia, must be read together to ascertain the legislative intent." (internal quotation marks and citation omitted)); *see* NMSA 1978, §§ 72–12–1 to –28 (1931, as amended through 1998); NMSA 1978, § 3–53–1 (1965) (granting municipalities the authority to regulate, inter alia, wells); NMSA 1978, § 3–53–2 (1965) (granting municipalities the authority to regulate

and restrict the use of water); NMSA 1978, § 3-27-1 (1965) (granting municipalities the authority to acquire and operate water facilities, including wells); NMSA 1978, § 3-27-3 (1994) (granting jurisdiction over water supply for the purpose of providing a municipal water system). The statutory provisions that grant powers to municipalities in other areas of water indicate the legislature did not intend to grant exclusive authority regarding domestic wells to the state engineer.

## III. CONCLUSION

{26} We reverse the judgment of the district court on the issue regarding municipal authority. We hold that under the City's home rule powers, it had authority to prohibit the drilling of a domestic well within the municipal boundaries and that this authority was not preempted by existing state law.

{27} **IT IS SO ORDERED.**

I CONCUR: CYNTHIA A. FRY, Judge.

MICHAEL E. VIGIL, Judge (specially concurring and dissenting).

VIGIL, Judge (specially concurring and dissenting).

{28} I dissent from the proposition that we may assume without deciding that the district court had jurisdiction to entertain Plaintiffs' declaratory judgment action. "Subject matter jurisdiction gives a court power and authority to act. Without it, the court has no power or authority to act." *Amica Mut. Ins. Co. v. McRostie*, 2006-NMCA-046, ¶ 17, 139 N.M. 486, 134 P.3d 773, 2006 WL 1161392, *cert. denied*, 2006-NMCERT-004, 139 N.M. 429, 134 P.3d 120 [No. 29,723]. However, because existing precedent leads me to conclude that the district court lacked jurisdiction, I agree with the conclusion of the majority to reverse the judgment of the district court. My reasoning follows.

{29} Smiths filed applications for well permits from the City. The City Manager denied the applications and Smiths appealed as provided in the City's appeal process. On September 19, 2001, the City Council rendered the final decision upholding the decision of the City Manager to deny the permits. Trusts never applied for a permit.

{30} The sole method of obtaining judicial review of the City's final administrative decision is by way of a writ of certiorari because no appeal or other mode of review is allowed or provided for the district court to review the decision of the City Council. Article VI, Section 13 of the New Mexico Constitution authorizes district courts to issue writs of certiorari to an inferior court or tribunal. "A writ of certiorari ... lies when it is shown that an inferior court or tribunal has exceeded its jurisdiction or has proceeded illegally, and no appeal or other mode of review is allowed or provided." *Rainaldi v. Pub. Employees Ret. Bd.*, 115 N.M. 650, 654, 857 P.2d 761, 765 (1993). *Masterman v. State Taxation & Revenue Department*, 1998-NMCA-126, 125 N.M. 705, 964 P.2d 869, specifically states that since the applicable statute in that case did not provide for a right to appeal the administrative decision, "a writ of certiorari provided the only mode of review." *Id.* ¶ 11.

{31} Rule 1-075 governs writs of certiorari when there is no statutory right to an appeal or other statutory right of review. Under Subsection (D) of the Rule, a petition for writ of certiorari "shall" be filed in the district court within thirty days after the date of the filed decision or order of the agency. The City Council issued the final order on September 19, 2001. The deadline for filing a petition for writ of certiorari in the district court to review the administrative decision was thirty days later on October 19, 2001. No petition was filed by that date. Instead, well after the deadline expired on January 7, 2002, Smiths and Trusts filed a complaint for declaratory judgment. The complaint for declaratory judgment appears to be an attempt to circumvent the time requirement for filing a petition for writ of certiorari.

{32} I therefore respectfully submit that under well-settled precedent, the district court lacked jurisdiction to rule on the complaint for declaratory judgment. In *Masterman*, a "Petition for Judicial Review" was filed seeking judicial review of an administrative decision when no statutory right to appeal the administrative decision was provided for. 1998-NMCA-126, ¶¶ 1, 10, 125 N.M. 705, 964 P.2d 869. This Court analyzed the petition as a writ of certiorari. Since the

petition for judicial review failed to allege the necessary jurisdictional prerequisites as provided in Rule 1–075, we held that the district court's jurisdiction was not properly invoked and we *sua sponte* reversed the order of the district court on grounds it had no jurisdiction to issue the order in the first place. *Masterman,* 1998–NMCA–126, ¶¶ 12–14, 125 N.M. 705, 964 P.2d 869. Similarly, in *City of Albuquerque v. Ryon,* 106 N.M. 600, 747 P.2d 246 (1987), the City of Albuquerque failed to timely appeal a final administrative decision to the district court as provided in the applicable ordinance. Instead, "the City attempted to reach by a declaratory judgment suit what it had waived by failure to timely appeal." *Id.* at 603, 747 P.2d at 249. Our Supreme Court first said that, "declaratory judgment actions are not intended to provide a substitute for other available actions." *Id.* Then, our Supreme Court specifically held that since the right to appeal had expired, the time for filing a declaratory judgment likewise had expired because "declaratory judgment actions are subject to the same limitations as the nature of the action sued upon in the underlying case." *Id.* In coming to this conclusion, the Supreme Court cited *Taylor v. Lovelace Clinic,* 78 N.M. 460, 432 P.2d 816 (1967), in which the Court affirmed dismissal of a declaratory judgment action because the statute of limitations had run on the underlying action. *Id.* at 461, 432 P.2d at 817. Therefore, held the Supreme Court, since the city's right to appeal had expired, so did its right to seek a declaratory judgment to obtain the identical relief that it could have obtained in an appeal. *Ryon,* 106 N.M. at 603, 747 P.2d at 249. The foregoing decisions are directly applicable here.

{33} If there is a basis for concluding that the district court did have jurisdiction over the declaratory judgment action, then we should say what that basis is. The majority cites *Pan American Petroleum Corp., Moriarty Municipal Schools, Grand Lodge of Ancient & Accepted Masons of New Mexico,* and *Taos Municipal Schools Charter School,* together with Sections 44–6–2, 44–6–4, and 44–6–14, in paragraph 5 to suggest that the district court had jurisdiction. Without belaboring the point, the cases are distinguishable and do not resolve the jurisdictional question presented. The majority acknowl-

edges this fact by not answering whether there was jurisdiction, choosing instead to assume without deciding that the district court had jurisdiction. The majority does so for the purpose of reaching the merits of the case. However, no standards are provided for determining when and under what circumstances any court, including this Court, may properly do so.

{34} The City vigorously argued in the district court and on appeal that there was no jurisdiction in the district court to hear the declaratory judgment action. However, since the majority has ruled in favor of the City on the merits, it has no incentive to seek a determination from the Supreme Court about whether the district court had jurisdiction in the first place. Therefore, the jurisdictional issue remains unresolved. This leaves the impression that our courts are able to pick and choose when they have jurisdiction over an administrative appeal depending on whether they wish to address the merits. I am unwilling to leave this impression.

{35} For the foregoing reasons, I concur only in the result reached to reverse the judgment of the district court, and I dissent from assuming without deciding that the district court had jurisdiction to entertain the declaratory judgment action. I therefore express no opinion about the merits.