845 P.2d 150

STATE of New Mexico, ex rel. Dr. Allan HAYNES, Jr., Dr. Ken Merritt, Dr. Jacob Moberly, David Williams and Charles Wade, Petitioners,

v.

Hon. David W. BONEM, District Judge, Ninth Judicial District, Respondent.

The Clovis City Commission, and Dr. James Moss, Chad Lydick, Mike Johnson, Charlie Anderson, Bill Bollinger, Isidro Garcia, Robert Moreno and Gordon Smith, as members of the Clovis City Commission, Real Parties in Interest.

No. 20319.

Supreme Court of New Mexico.

Nov. 16, 1992.

Warren F. Frost, Clovis, for petitioners.

David F. Richards, Van Soelen, Greig, Gutierrez & Richards, Clovis, for real parties in interest.

Judith A. Olean, Gen. Counsel, New Mexico Municipal League, Santa Fe, Steven Barshov, Sive, Paget & Riesel, New York City, for amicus curiae.

## OPINION

MONTGOMERY, Justice.

We issued an alternative writ of prohibition in this case to consider an important question relating to the legislative powers of home rule municipalities under New Mexico law: whether a home rule municipality may provide for a different number of members of its governing body than the number prescribed by the Municipal Code.[1] More specifically, the question is whether the City of Clovis, a home rule municipality that has adopted a commission-manager form of government, is bound by the provisions of NMSA 1978, Sections 3–10–1(B) and 3–14–6(A) (Repl.Pamp.1985), to constitute its city commission with five members, or may instead provide for a different number as set out in its charter.

We hold that neither Section 3–10–1(B) nor Section 3–14–6(A) is a general law that expressly denies to a home rule municipality the power to provide for a different number of city commissioners than that fixed in those statutes. More broadly, we hold that the purpose of the home rule amendment to our Constitution[2]—to provide for maximum local self-government— would be frustrated by applying the statutes to a home rule municipality, because the subject of the legislation (composition of the municipal government) is a matter of local concern; and, even if the subject is regarded as a matter of statewide concern, the legislature has not expressly denied the power to enact a composition different from that set out in the Municipal Code.

---

1. The New Mexico Municipal Code is compiled in Chapter 3 of the 1978 recompilation of the New Mexico Statutes Annotated.

2. N.M. Const. art. X, § 6.

## I.

The City of Clovis adopted its home rule charter in 1971. The charter provides that the City is to be governed by a commission-manager form of government and calls for a seven-member city commission, with four commissioners to be elected from four single-member districts and three commissioners to be elected at large.

In 1985, two residents of Clovis sued the City in the United States District Court for the District of New Mexico for alleged violations of the federal Voting Rights Act.[3] The lawsuit resulted in a judgment by consent decree on July 18, 1986. The consent decree changed the number of members on the city commission and the method of their election. It ordered that the commission be composed of eight members, to be elected from four dual-member districts. The consent decree set forth a specific districting plan for the City and stated that the districting plan would "remain in effect" until the Clovis City Commission had the responsibility or opportunity to redistrict based on the 1990 census. It further provided that "[a]fter that time, any claim that any districting plan employed by the Clovis City Commission violates federal law or the law of the State of New Mexico must be pursued, if at all, through a new and different lawsuit or other legal proceeding."

Following entry of the federal court judgment, the City of Clovis implemented the new districting plan in accordance with the terms of the consent decree. That plan remained in effect until 1991, when the City began redistricting to comport with the 1990 census. While the City was considering various redistricting plans, the petitioners in this case requested that the City change the composition of the Commission from eight members, elected from four dual-member districts, to five members, elected from five single-member districts. The petitioners based their request on various provisions of the Municipal Code, including Section 3–10–1(B), which states that the elective officers of a commission-manager form of government shall include five commissioners, and Section 3–14–6(A), which provides that the governing body of a commission-manager form of government shall district the municipality into five single-member districts.[4]

The Clovis City Commission refused petitioners' request and instead adopted a redistricting plan that retained four dual-member districts. Subsequently, petitioners filed a petition for a writ of mandamus in the District Court of Curry County, requesting that the court order the City Commission to adopt a plan providing for five single-member commissioner districts.

The district court issued an alternative writ of mandamus, directing the respondents (the Commission and its members, who are the Real Parties in Interest in this Court) to answer the writ and appear at a hearing on December 5, 1991. The respondents filed their answer and then moved to quash the writ, asserting that the City of Clovis, as a home rule municipality, has the right to establish its own form and organization of municipal government and is not bound by the provisions of the Municipal Code relating to the commission-manager form of government. Additionally, they argued that the state court had no authority to modify the districting plan set forth in the 1986 federal court consent decree.

Following two hearings, the district court entered an order quashing the alternative writ of mandamus. In explaining its decision in a January 1992 letter to the parties, the court first rejected the respon-

---

3. 42 U.S.C. § 1973 (1988).

4. Section 3–10–1(B) provides: "B. The elective officers of a municipality having a commissioner-manager form of government are: (1) five commissioners; and (2) a municipal judge."

    Section 3–14–6(A) provides: "A. The governing body of a municipality organizing under the commission-manager form of government shall district the municipa'ity into five commissioner districts. Each district shall be compact in area and equal in population, as nearly as possible. For all municipalities having a population in excess of ten thousand, a commissioner shall reside in and be elected from each district; provided that the governing body of a municipality having a population of ten thousand or less may provide for single-member districts as provided in this section."

dents' argument that the state court had no authority to modify the consent decree. It found that, because the prerequisites to redistricting set forth in the consent decree had occurred, there was no federal preemption of the right to implement an alternative districting plan. Nevertheless, the court concluded that mandamus was not appropriate because the City of Clovis was not required to comply with Sections 3–10–1(B) and 3–14–6(A). The court distinguished *Casuse v. City of Gallup*, 106 N.M. 571, 746 P.2d 1103 (1987), in which this Court held that NMSA 1978, Section 3–12–1.1 (Cum.Supp.1992), which requires that members of municipal governing bodies reside in and be elected from single-member districts, applies to home rule municipalities. The district court stated that it found no legislative intent that Sections 3–10–1(B) and 3–14–6(A) should apply to home rule municipalities and that therefore, while *Casuse* requires that the city commissioners be elected from single-member districts, the law does not otherwise require the number of commissioners to be five. In quashing the writ, the court granted petitioners two weeks to amend their request for relief, presumably to seek an order that the Commission redistrict into single-member districts.

■ Petitioners chose not to amend their petition, stating that "[s]imply requiring the City to go to single member districts is unacceptable to the Petitioners." Instead, they petitioned this Court for a writ of prohibition, requesting that we issue a writ prohibiting the district court from dismissing their petition for a writ of mandamus.

We issued an alternative writ of prohibition, established a briefing schedule, and heard oral argument. On February 25, 1992, with the municipal election scheduled for April 7, 1992, we issued our order quashing the alternative writ of prohibition. Because we believe that the proceeding presents a significant issue relating to the powers of home rule municipalities, we now issue this opinion to explain our reasons for quashing the alternative writ.[5]

## II.

Resolution of the issue in this case requires an understanding of municipal home rule and the distinction between home rule and non-home-rule municipalities. Prior to 1970, municipal home rule did not exist in New Mexico. At that time, all municipalities in the state depended on the state legislature for their power to act. They looked to state statutes for express or implied grants of authority, and if they did not find such authority, they could not act. Thus, the state exercised plenary control over municipal governments except as limited by the state or federal constitutions. *See Apodaca v. Wilson*, 86 N.M. 516, 521, 525 P.2d 876, 881 (1974) (quoting *Pitre v. Baker*, 111 S.W.2d 359, 361 (Tex.Civ.App. 1937)).

■ In 1970, New Mexico adopted a home rule amendment to our Constitution and thereby authorized a change in the then existing relationship between state and local governments. That amendment establishes the right of the citizens of a

---

5. Our resolution of this case makes it unnecessary for us to rule on the point asserted by the Real Parties in Interest in response to the writ—that, because the federal court consent decree remedied a federal civil rights violation and was implemented to increase minority voting rights, a state court has no authority to overturn that decree on state law grounds. However, since some of the issues presented to the district court in this case may arise again, *see infra* note 9, we comment that the Respondent, Judge Bonem, correctly dealt with this issue in his thorough letter decision in January 1992. As Respondent pointed out, while the purpose of the consent decree was to remedy voting rights violations, its terms were not meant to exist in perpetuity. On the contrary, the decree itself contemplated

future changes to the districting plan that were not limited to redistricting. The decree provided that, after the Commission began redistricting following the 1990 census, "any claim that any districting plan employed by the Clovis City Commission violates ... the law of the State of New Mexico must be pursued, if at all, through a new and different lawsuit or other legal proceeding." At the time petitioners requested a writ of mandamus from the district judge, the Commission had begun redistricting and apparently had chosen a new districting plan to comport with the results of the 1990 census. Accordingly, *the state court had authority to consider petitioners' request and, if necessary, to determine that the districting plan set forth in the consent decree violated state law.*

municipality to adopt a home rule charter. N.M. Const. art. X, § 6. A municipality adopting such a charter becomes a "home rule municipality" and may then "exercise all legislative powers and perform all functions not expressly denied by general law or charter." *Id.* § 6(D). Thus, home rule municipalities do not look to the legislature for a grant of power to legislate, but only look to statutes to determine if any express limitations have been placed on that power. *Apodaca,* 86 N.M. at 521, 525 P.2d at 881. Those municipalities that choose not to adopt a home rule charter must still depend on the legislature for their power to act.

The purpose of municipal home rule is to "enable municipalities to conduct their own business and control their own affairs, to the fullest possible extent, in their own way." *Apodaca,* 86 N.M. at 520, 525 P.2d at 880 (quoting *Fragley v. Phelan,* 126 Cal. 383, 58 P. 923, 925 (1899)). Our home rule amendment states that "[t]he purpose of this section is to provide for maximum local self-government" and that "[a] liberal construction shall be given to the powers of municipalities." N.M. Const. art. X, § 6(E).

Additionally, the New Mexico Municipal Charter Act, NMSA 1978, Sections 3–15–1 to –16 (Repl.Pamp.1985 & Cum.Supp.1992), which supplements and implements the home rule amendment, provides that:

> The charter *may provide for any system or form of government that may be deemed expedient and beneficial* to the people of the municipality, including the

manner of appointment or election of its officers, the recall of the officers and the petition and referendum of any ordinance, resolution or action of the municipality; provided, that the charter shall not be inconsistent with the constitution of New Mexico

*   *   *   *   *   *

NMSA 1978, § 3–15–7 (Repl.Pamp.1985) (emphasis added).[6]

With this background, we may now consider the specific issue before us. Stated again, that issue is whether Sections 3–10–1(B) and 3–14–6(A) bind a home rule municipality and preclude it from adopting a governmental structure that is inconsistent with those provisions. To resolve this issue we must determine whether either Section 3–10–1(B) or Section 3–14–6(A) is (1) a "general law" that (2) "expressly denies" to a home rule municipality the right to establish the structure (and especially, in this case, the number of commissioners) of a commission-manager form of government.

### III.

The first question is whether the statutes at issue are "general laws." A general law is "a law that applies generally throughout the state, or is of statewide concern as contrasted to 'local' or 'municipal' law." *Apodaca,* 86 N.M. at 521, 525 P.2d at 881. Petitioners, relying on *Casuse v. City of Gallup,* assert that Sections 3–10–1(B) and

---

**6.** Another section of the Municipal Charter Act suggests a possible alternative argument, not raised by any party to this proceeding, supporting our decision that §§ 3–10–1(B) and 3–14–6(A) do not apply to the City of Clovis. NMSA 1978, § 3–15–13(A) (Repl.Pamp.1985) reads: "A municipality organized under the provisions of the Municipal Charter Act *shall be governed* by the provisions of the charter adopted pursuant to that act, and no law relating to municipalities inconsistent with the provisions of the charter shall apply to any such municipality." (Emphasis added.) The argument, if made, might run as follows: The legislature has specifically provided in this section that no law relating to municipalities that is inconsistent with the *governing* provisions of a home rule charter shall apply to any home rule municipality. The statute is not restricted to matters of local concern

and extends even to charter provisions of statewide concern, thereby restricting application of legislation more than required by the Constitution. It is only the exercise of municipal *legislative* powers that the legislature recognizes as being subject to express denial by general law. *See* § 3–15–13(B) (municipality adopting charter may exercise all *legislative* powers not expressly denied charter municipalities by general law or charter). Therefore, since §§ 3–10–1(B) and 3–14–6(A) pertain to governmental provisions and not to legislative powers, to the extent those laws are inconsistent with the Clovis charter, the legislature did not intend that they apply to that municipality.

As noted, no such argument was raised or briefed by the parties. We therefore have not evaluated it; our decision in this case rests on the grounds stated in the text of this opinion.

3–14–6(A) are general laws because Section 3–10–1(B) applies to all municipalities in the state and Section 3–14–6(A) applies to all municipalities with populations over 10,000.

■ In *Casuse,* this Court held that Section 3–12–1.1 of the Municipal Code is a general law because it applies to all municipalities in the state with populations over 10,000. However, that holding was founded on a statewide concern for the principle of single-member districting in general, and we do not believe *Casuse* holds that the form of a law determines whether the law should be characterized as "general" for purposes of Article X, Section 6 (the home rule amendment) of the Constitution. *See Apodaca,* 86 N.M. at 522, 525 P.2d at 882 ("A law general in form cannot, under the Constitution, deprive cities of the right to legislate on purely local affairs germane to the purposes for which the city was incorporated.") (quoting *City of Portland v. Welch,* 154 Or. 286, 59 P.2d 228, 232 (1936)). Even if a statute applies to all municipalities throughout the state, it is not necessarily a general law if it does not relate to a matter of statewide concern.

The proposition just stated may at first blush seem inconsistent with the definition of "general law" in *Apodaca* as a law applying generally throughout the state *or* one of statewide concern. In the context of the home rule amendment, however, we believe there is no inconsistency. In defining the term "general law" as used in the home rule amendment, this Court in *Apodaca* was attempting to impart the basic notion, applied across the country, that in order for a statute to override an enactment of a home rule municipality, the statute must relate to a matter of statewide concern. *See, e.g.,* 2 Eugene McQuillin, *The Law of Municipal Corporations* § 4.80, at 180 (3d ed. rev. vol. 1988) ("A home-rule city's ordinance will supersede a conflicting state statute on the same subject matter in areas of strictly local concern. Conversely, a state statute will su-

persede a conflicting municipal charter or ordinance on a matter of exclusively statewide concern." (footnote omitted)).[7] We might as easily have said, for example, that the term "general law" means a law that applies generally throughout the state *and* is of statewide concern as contrasted to "local" or "municipal" law. Or we could have said that a general law is one that applies generally throughout the state or (*in other words*) is of statewide concern, as contrasted to a local or municipal law. The disjunctive "or" does not exclude the conjunctive "and" unless the context so requires.

Our opinion in *Apodaca* made clear that in order for a general law to supersede a home rule municipality's charter or ordinance, " 'the subject matter of the general legislative enactment must pertain to those things of general concern to the people of the state.' " *Apodaca,* 86 N.M. at 522, 525 P.2d at 882 (quoting *City of Portland,* 59 P.2d at 232). Similarly, we have in other cases focused on the impact of the law and whether it implicates matters of statewide concern, as opposed to matters of purely local concern, in characterizing the law as "general" for the purpose of determining which of two conflicting enactments, legislative or municipal, should be given primacy. *See In re Generic Investigation into Cable Television Servs.,* 103 N.M. 345, 351, 707 P.2d 1155, 1161 (1985) ("[D]ata transmission services are clearly a matter of general statewide concern and therefore within the authority of the [State Corporation] Commission to regulate."); *Chapman v. Luna,* 101 N.M. 59, 62, 678 P.2d 687, 690 (1984) ("[NMSA 1978,] Section 66–6–25, applies generally throughout the state and is of statewide concern because the people of the state have an interest in maintaining a uniform system of conditions and charges for operating motor vehicles in the state. Section 66–6–25 is therefore a 'general law' * * *.")

7. *See also id.* § 4.28, at 71 ("The principal conflict [among decisions from different jurisdictions] is not as to the general rule giving precedence to state statutes respecting matters of state wide concern and precedence to home rule charters respecting matters of purely local concern, but instead the conflict is as to what are matters of state wide concern and what are matters of purely local concern.").

■ Determining whether a matter is of statewide or local concern is not always an easy task. "[T]here is a twilight zone within which it is difficult to discern with positive assurance what is a matter of general concern as distinguished from a matter of local or municipal concern." McQuillin, *supra*, § 4.85, at 207–08.[8] Because of this difficulty, some courts have eschewed altogether any attempt to lay down a firm rule as to what is a matter of general, statewide concern and what is a matter of only local or municipal concern. *See id.* § 4.85 (referring to courts' unwillingness or inability to designate line dividing municipal and state affairs). While we likewise do not feel it necessary to lay down a fixed guiding principle that will in all cases distinguish between the two areas of concern, we do believe that our own case law provides considerable assistance in this regard. In *Apodaca*, we quoted from *City of Portland*, which in turn quoted from McQuillin, as follows:

" 'The purpose (referring to the home rule amendments) was to give local communities full power in matters of local concern, that is, in those matters which peculiarly, *affected* the inhabitants of the locality, not in common with the inhabitants of the whole state. Those matters which *affected* all of the inhabitants of the state were viewed as state matters, and therefore subject to state control, but those things which did not concern inhabitants of the state other than those residing in the particular community, were sought to be differentiated as local concerns, which under these constitutional provisions were to be regarded as exclusively matters of local self-government * * *.' "

*Apodaca*, 86 N.M. at 522, 525 P.2d at 882 (quoting *City of Portland*, 59 P.2d at 232, and McQuillin, *supra*, § 93 (2d ed.) (emphasis added)). Thus, the test, or at least *a* test, is the *effect* of a legislative enactment—whether it affects all, most, or many of the inhabitants of the state and is therefore of statewide concern, or whether it affects only the inhabitants of the municipality and is therefore of only local concern.

■ In the present case, the statutes at issue, Sections 3–10–1(B) and 3–14–6(A), contain two basic requirements: that the governing bodies of commission-manager forms of government shall be composed of five commissioners and that the commissioners shall be elected from single-member districts. Because petitioners have chosen not to pursue a claim that the City of Clovis must restructure itself into single-member districts, we do not address that potential claim.[9] Rather, we focus on

---

**8.** In making this determination, this Court has previously applied a test that asks whether the activity or function at issue is proprietary or governmental in character. If the activity is one in which any corporation or individual could engage, we have said that the activity is a proprietary function and is of local concern; however, if the activity is one in which only a governmental agency could engage, we have termed it a governmental function and of statewide concern. *See City of Albuquerque v. New Mexico State Corp. Comm'n*, 93 N.M. 719, 722, 605 P.2d 227, 230 (1979) (quoting *Britt v. City of Wilmington*, 236 N.C. 446, 73 S.E.2d 289, 293 (1952)); *Apodaca*, 86 N.M. at 522, 525 P.2d at 882 (quoting *City of Tucson v. Tucson Sunshine Climate Club*, 64 Ariz. 1, 164 P.2d 598, 602 (1945)).

While the proprietary/municipal distinction may have been helpful in the past, we have doubts as to its continuing vitality. As McQuillin states, "[A] discussion of the nature of a particular municipal function as being governmental or proprietary has been said to have no bearing on the question of whether it is a matter of state or local concern." McQuillin, *supra*, § 4.85, at 207. Moreover, distinguishing between the governmental and proprietary powers of a municipal corporation may present just as difficult an inquiry as determining whether an activity is of state or local interest. *See id.*

**9.** We do not wish to be understood, however, as precluding any future challenge to the City's dual-member districting scheme. As *Casuse* holds, Section 3–12–1.1, which mandates single-member districting, is a general law that applies to all municipalities, including those with home rule charters. The statute's mandate embodies the important state interest of protecting against the potential inequalities associated with multi-member districts and at-large voting schemes. As the United States Supreme Court has recognized, the latter election systems may " 'operate to minimize or cancel out the voting strength of racial [minorities in] the voting population' " by submerging and diluting minority votes within a majority group. *Thornburg v. Gingles*, 478 U.S. 30, 47, 106 S.Ct. 2752, 2764, 92 L.Ed.2d 25 (1986) (quoting *Burns v. Richardson*, 384 U.S.

their argument that the City Commission must consist of five, rather than seven (or eight), commissioners. Accordingly, we must consider whether the number of commissioners in a commission-manager form of government is a matter of statewide or of local concern—*i.e.*, whether that matter affects the inhabitants of this state outside the City of Clovis or affects only the City's residents.

Considering this issue in light of the purpose of our home rule amendment, we rather easily conclude that the subject is of local concern. As we have said, the purpose of our home rule amendment is to delegate to municipalities autonomy in matters concerning their local community, as opposed to matters of statewide concern or interest. We believe that the present subject—the number of commissioners in the governing body—is precisely the sort of matter intended to fall within the decision-making power of a home rule municipality. It is a subject that is predominantly, if not entirely, of interest to the citizens of the City of Clovis. To paraphrase a rhetorical question in *Apodaca*, 86 N.M. at 523, 525 P.2d at 883: Of what concern is it statewide what the City's residents decide as to the number of commissioners they wish to serve on their city commission?

### IV.

Having concluded that neither Section 3-10-1(B) nor Section 3-14-6(A) is a "general law" within the meaning of Article X, Section 6, of the Constitution, we need not consider the second question noted above—whether either section "expressly denies" the power to a home rule municipality to provide for a different number of city commissioners than that prescribed by the statutes. The legislature is not constitutionally empowered to deny to home-rule municipalities their powers of local governance. However, a few words on the meaning of the phrase "expressly denies" may be helpful in resolving future cases. Although we said in *Apodaca* that the phrase "not expressly denied" means "that some express statement of the authority or power denied must be contained in such general law in order to be applicable," 86 N.M. at 521, 525 P.2d at 881, we have since qualified this statement by noting that a negation of the power *in haec verba* is not necessary; words or expressions which are tantamount or equivalent to such a negation are equally effective. In *Casuse*, we said that "any New Mexico law that clearly intends to preempt a governmental area should be sufficient without necessarily stating that affected municipalities must comply and cannot operate to the contrary." 106 N.M. at 573, 746 P.2d at 1105. We cited *Westgate Families v. County Clerk of Los Alamos*, 100 N.M. 146, 667 P.2d 453 (1983), in which we noted that the Zoning Enabling Act [10] expressly provided for zoning *only* by a majority vote of a representative body; we therefore held that the Act expressly denied an exercise of zoning power by referendum. *Id.* at 148, 667 P.2d at 455. More recently, in *In re Generic Investigation into Cable Television Servs.*, we said: "Although the regulatory authority at issue is not specifically denied to home rule municipalities by Article XI, the grant of the authority to the Commission makes its exercise by any other governmental body

---

73, 88, 86 S.Ct. 1286, 1294, 16 L.Ed.2d 376 (1966) (alteration in original). Such dilution may occur when minority and majority voters, placed within the same district, prefer different candidates, and the majority, by virtue of its numerical superiority, defeats the choices of minority voters. *Id.*, 478 U.S. at 48, 106 S.Ct. at 2765. Single-member districting schemes, which often group minority voters into a single district (thereby making them the majority within their district) contain less potential for abuse than multimember districts and at-large voting schemes. Section 3-12-1.1 implements an important state policy of guarding against such potential abuse. As such, it reflects a matter of statewide concern and may therefore—in addition to the reason set forth in *Casuse* itself—be regarded as a "general law."

The City's current dual-member districting plan and the plan set forth in its charter (calling for three at-large members) may therefore violate § 3-12-1.1. Except for the cautionary observations in this footnote, we express no opinion on this possibility at the present time and only note the potential for such a challenge in the future.

**10.** NMSA 1978, §§ 3-21-1 to -26 (Repl.Pamp.1985 & Cum.Supp.1992).

so inconsistent with the Constitution that it is equivalent to an express denial." 103 N.M. at 351, 707 P.2d at 1161.

We find no indication that either Section 3–10–1(B) or Section 3–14–6(A) clearly intends to preempt (to the legislature) the governmental area of fixing the number of city commissioners and to restrict home rule municipalities from adopting a different number. Similarly, we see in neither of these sections a limitation that the number of commissioners may be set at *only* a stated number, nor do we find a grant of authority to some other governmental body or agency that would make a city's exercise of its power to establish the structure of its governing body so inconsistent with such a grant of authority that the grant could properly be deemed equivalent to an express denial.

## V.

For either of these reasons, then—that is, because neither Section 3–10–1(B) nor Section 3–14–6(A) is a general law of statewide concern, and/or because neither section expressly denies to a municipality the power to constitute its city commission with a different number of commissioners than that prescribed in the statutes—we hold that these sections, insofar as they provide for five city commissioners in a commission-manager form of government, do not override the inconsistent provisions of the Clovis Municipal Charter. We do not read these sections out of our Municipal Code; they retain vitality as default provisions governing municipalities that choose not to become home rule municipalities.

We believe that our reasoning gives important meaning to the concept of municipal home rule in New Mexico. Our holding comports with the mandate of our home rule amendment that "a liberal construction shall be given to the powers of municipalities" and with the mandate of the Municipal Charter Act that the "charter may provide for any system or form of government that may be deemed expedient and beneficial to the people of the municipality."

Accordingly, we reaffirm our previous order quashing our alternative writ of prohibition in this case.

IT IS SO ORDERED.

RANSOM, C.J., and FRANCHINI, J., concur.