# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: December 5, 2018

**NO. A-1-CA-35908**

**WILFREDO ESPINOZA,**

   Plaintiff-Appellant,

v.

**CITY OF ALBUQUERQUE,**

   Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie Huling, District Judge**

Mescall Law Firm, P.C.
Thomas J. Mescall, II
Phillip Patrick Baca
Albuquerque, NM

for Appellant

Jessica M. Hernandez, City Attorney
Jeffrey B. Driggers, Assistant City Attorney
Andrew S. Coon, Assistant City Attorney
Albuquerque, NM

for Appellee

C. Brad Lane-Cates, Attorney
Brad Cates
Fairacres, NM

Institute for Justice
Robert Frommer
Arlington, VA

for Amici Curiae Arlene Harjo

**OPINION**

**FRENCH, Judge.**

{1}     This case requires us to resolve whether the New Mexico Forfeiture Act (NMFA), NMSA 1978, §§ 31-27-1 to -11 (2002, as amended through 2015), preempts the City of Albuquerque's (the City) civil forfeiture ordinance, Albuquerque, N.M., Rev. Ordinances ch. 7, art.VI, §§ 7-6-1 to -7 (1992, as amended through 2014) (the Ordinance). Concluding that it does, we reverse the district court's judgment and order denying Wilfredo Espinoza's (Plaintiff) verified petition for writ of mandamus, and dismissing his complaint for declaratory and injunctive relief.

**BACKGROUND**

{2}     In 2016 the City seized Plaintiff's vehicle pursuant to the Ordinance, which provides that a motor vehicle "is hereby declared to be a nuisance and subject to immediate seizure and forfeiture" if the vehicle is "[o]perated by a person in the commission of a DWI offense" or "by a person whose license is suspended or revoked" as a result of a DWI conviction or arrest. Albuquerque, N.M., Rev. Ordinance § 7-6-2. Plaintiff sued the City seeking (1) a declaration that the Ordinance is in "violation of the [NMFA,]" (2) a permanent injunction prohibiting the City from enforcing the Ordinance, and (3) an order requiring the City to return Plaintiff's vehicle to him. The City answered and stated, among other things, that the NMFA does not apply to the Ordinance, after which Plaintiff filed a verified

petition for writ of mandamus and prohibition and motion for judgment on the pleadings. After briefing and a hearing on the matter, the district court entered a final judgment and order finding that the NMFA "does not preempt or limit in any way the City of Albuquerque's ordinance[.]" The court dismissed Plaintiff's complaint and denied the petition. This appeal followed.

**DISCUSSION**

{3}    The sole issue presented by this appeal is whether the NMFA preempts the Ordinance. Whether a municipal ordinance enacted by a home-rule municipality is preempted by state law "requires us to construe together a constitutional amendment, the statutes, and an ordinance, which involves a question of law reviewed de novo." *Prot. & Advocacy Sys. v. City of Albuquerque*, 2008-NMCA-149, ¶ 43, 145 N.M 156, 195 P.3d 1. "Interpretation of constitutional clauses begins with the language of the text[,]" as does our construction of statutes. *New Mexicans for Free Enterprise* (*NMFE*) *v. City of Santa Fe*, 2006-NMCA-007, ¶ 11, 138 N.M. 785, 126 P.3d 1149. We begin with the language of the statute, "resorting to other sources when necessary, and ultimately seeking to determine and give effect to the intent of the [L]egislature." *Id.*

**The New Mexico Forfeiture Act**

{4}    The New Mexico Legislature enacted the NMFA in 2002 and substantially revised it in 2015. Of particular importance are the amendments made to Section 31-27-2, enumerating the purposes of the NMFA. Prior to 2015, the stated

2

purposes of the NMFA were to "(1) make uniform the standards and procedures for the seizure and forfeiture of property subject to forfeiture[,] and (2) protect the constitutional rights of persons accused of a crime and of innocent persons holding interests in property subject to forfeiture." Section 31-27-2(A) (2002). The Legislature expounded upon the NMFA's purposes in the 2015 amendments. In addition to the existing two purposes, the NMFA is intended to "(3) deter criminal activity by reducing its economic incentives; (4) increase the pecuniary loss from criminal activity; (5) protect against the wrongful forfeiture of property; and (6) ensure that only *criminal* forfeiture is allowed in [New Mexico]." Section 31-27-1(A)(3-6).

{5}      To that end, the NMFA is a criminal forfeiture proceeding that allows property to be forfeited by a law enforcement officer when a person is arrested for and convicted of a criminal offense, and the state establishes by clear and convincing evidence that the property is subject to forfeiture because it was acquired through the commission of the criminal offense, or it was an instrumentality that the person used in the commission of the criminal offense. *See* § 31-27-4(A), (B).

{6}      The state may seize property prior to a person's conviction for a criminal offense only under certain circumstances. Section 31-27-4(D), (E). The court can issue a preliminary order to seize property after determining that there is a "substantial probability" that (1) the state will be able to prove the property is

subject to forfeiture; (2) the property will be destroyed, removed from the state, or otherwise made unavailable if the court does not enter the order permitting seizure; and (3) the need to preserve the property through the order outweighs the hardship to the owner and those known to claim an interest in the property. Section 31-27-4(D). Property may be seized without the preliminary order only if (1) the seizure is incident to a lawful arrest for a crime, or a search conducted pursuant to a search warrant and the arresting officer has probable cause to believe both that property is subject to forfeiture and that the arrested or search person is an owner of the property; (2) the seized property is the subject of a judgment in favor of the state; or (3) the officer has probable cause to believe both that the property is subject to forfeiture and that the delay caused by obtaining a preliminary order would result in the removal or destruction of the property. Section 31-27-4(E).

{7}     The NMFA requires that "[w]ithin thirty days of making a seizure of property or simultaneously upon filing a related criminal indictment, the state shall file a complaint of ancillary forfeiture proceedings or return the property to the person from whom it was seized." Section 31-27-5(A). Those that claim an interest in the property must then answer the complaint, Section 31-27-6(A), and following the trial for the criminal offense, a forfeiture proceeding may begin. Section 31-27-6(C). During the proceeding, the state has the burden of proving, by clear and convincing evidence, that (1) the person whose property is alleged to be subject to forfeiture is an owner of the property; (2) the criminal prosecution of the owner of

4

the property resulted in a conviction; and (3) the value of the property to be forfeited does not reasonably exceed the monetary gain derived from the crime, the monetary loss caused by the crime, or the value of the convicted owner's interest in the property. Section 31-27-6(F),(G).

{8}	If the state meets its burden, the court enters a judgment of forfeiture. Section 31-27-6(G). After the closing of the forfeiture proceeding, "the person whose property was forfeited may petition the court to determine whether the forfeiture was unconstitutionally excessive," and "grossly disproportional to the seriousness of the criminal offense for which the person was convicted[,]" requiring the court to consider a host of factors, including the seriousness of the crime and its impact on the community, and the sentence imposed for the commission of the crime. Section 31-26-6 (K), (L), (M).

{9}	Finally, the NMFA describes the processes whereby the state acquires title to the forfeited property, as well as the sale of the forfeited property, and the disposition of the proceeds from the sale of the forfeited property, which is to be distributed into the state's general fund. Section 31-27-7.

**The City's Forfeiture Ordinance**

{10}	The Ordinance permits the City to subject motor vehicles to "immediate seizure and forfeiture" if they are:

> (A) Operated by a person in the commission of a DWI offense
> . . . and has, on at least one prior occasion, been arrested, summonsed
> or convicted for (i) an offense of driving under the influence of an

5

intoxicating liquor or drugs in any jurisdiction, or (ii) homicide by vehicle or great bodily harm by vehicle . . . while under the influence of intoxicating liquor or while under the influence of any drug and/or[;]

      (B) Operated by a person whose license is suspended or revoked as a result of conviction for driving while intoxicated or suspended or revoked as a result of a driving while intoxicated arrest.

Albuquerque, N.M., Rev. Ordinance § 7-6-2. The Ordinance allows for seizure by court order, or without such order if the seizure is incident to an arrest of the driver for driving while intoxicated or driving while his or her license is suspended or revoked as a result of an arrest for driving while intoxicated. Albuquerque, N.M., Rev. Ordinance § 7-6-5(A), (B).

{11}    Once seized, the arresting officer serves a "Notice of Forfeiture" to the person from whom the vehicle was seized. Albuquerque, N.M., Rev. Ordinance § 7-6-5(D). The owner may then request a hearing in front of a city hearing officer—that is "informal and not bound by the technical rules of evidence"—to determine whether the officer had probable cause to seize the vehicle. Albuquerque, N.M., Rev. Ordinance § 7-6-5(D)(8). If so, "proceedings for an order for forfeiture shall be instituted promptly. *Id.*. Once the property is forfeited, the police department sells the vehicle and uses the proceeds to "carry out the purpose and intent" of the Ordinance. Albuquerque, N.M., Rev. Ordinance § 7-6-5(E).

{12}    Finally, the Ordinance provides an "innocent owner defense," which allows any owner or co-owner of the property an opportunity to demonstrate by a

6

preponderance of the evidence that he or she "could not have reasonably anticipated that the vehicle could be used in a manner constituting" a nuisance. Albuquerque, N.M., Rev. Ordinance § 7-6-7(A) (internal quotation marks omitted). If the owner makes this prima facie showing, "the burden is upon the city to prove by a preponderance of the evidence that the owner could have reasonably anticipated that the vehicle could be used in the manner constituting the nuisance." *Id.*

**Preemption**

{13}    Plaintiff argues that several provisions of the Ordinance are inconsistent with the NMFA, and the NMFA thereby preempts the Ordinance. The City relies upon Section 31-27-2(B)(1) of the NMFA and argues that the Ordinance does not conflict with the NMFA because "the Legislature allowed municipalities the decision to opt-in to the [NMFA.]" Section 31-27-2(B)(1) states: "The [NMFA] applies to seizures, forfeitures and dispositions of property subject to forfeiture pursuant to laws that specifically apply the [NMFA.]" Based upon this statutory language, and the lack of language in the Ordinance expressly providing that the NMFA applies to the Ordinance, the City maintains that the NMFA cannot preempt the Ordinance. Indeed, the City maintains that the "other provisions of the [NMFA], are irrelevant since the [NMFA] does not apply to the Ordinance."

{14}    We agree with Plaintiff, and therefore we begin with the law of preemption in New Mexico. We then explain why the City's argument is incorrect. "A

municipality . . . may exercise all legislative powers and perform all functions not expressly denied by general law or charter." N.M. Const. art. X, § 6(D). The City "no longer has to look to the [L]egislature for a grant of power to act, but only looks to legislative enactments to see if any express limitations have been placed on their power to act." NMFE, 2006-NMCA-007, ¶ 15 (internal quotation marks and citation omitted); *see Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 15, 149 N.M. 556, 252 P.3d 780 (defining "Albuquerque is a home[-]rule charter municipality"). An enactment by the Legislature preempts a municipality's ordinance if it "expressly denies municipalities the authority to legislate similar matters[.]" *Casuse v. City of Gallup*, 1987-NMSC-112, ¶ 3, 106 N.M. 571, 746 P.2d 1103. Determination of express denials of a home-rule municipality's power or authority involves a two-step process. "In the first step, a court asks whether a state law is a general law," and "[i]n the second step, we ask whether state law expressly denies the City's power to enact the [o]rdinance in question." *Prot. & Advocacy Sys.*, 2008-NMCA-149, ¶¶ 46-47 (internal quotation marks and citation omitted).

**The NMFA Is a General Law**

{15}     A general law is "one that [a]ffects the community at large, as opposed to a local law that deals with a particular locality." *Casuse*, 1987-NMSC-112, ¶ 3. A general law "applies generally throughout the state, relates to a matter of statewide concern, and impacts inhabitants across the entire state." *Smith v. City of Santa Fe*,

8

2006-NMCA-048, ¶ 9, 139 N.M. 410, 133 P.3d 866; *see Apodaca v. Wilson*, 1974-NMSC-071, ¶ 16, 86 N.M. 516, 525 P.2d 876 (emphasizing that in order "to control or limit municipal enactments, the general law must be of general concern to the people of the state").

{16} An example of a general law is a statute governing utility rate-making, which is a matter of statewide rather than local concern "because a proposed service rate for one municipality can affect rates to other municipalities in the state." *City of Albuquerque v. N.M. Pub. Serv. Comm'n* (*Public Service Commission*), 1993-NMSC-021, ¶ 25, 115 N.M. 521, 854 P.2d 348. The Minimum Wage Act is also a general law because "an hourly minimum wage is of obvious concern to workers across the state and it applies to all workers in the state." *NMFE*, 2006-NMCA-007, ¶ 18. In contrast, state provisions setting the allowable number of municipal commissioners is not a matter of general concern because the number of commissioners a municipality has "is predominately, if not entirely, of interest to the citizens of the" municipality for which the commissioners serve. *State ex rel. Haynes v. Bonem*, 1992-NMSC-062, ¶ 21, 114 N.M. 627, 845 P.2d 150. Similarly, a statute regulating government employees' First Amendment activities is not a matter of general concern because it touches upon the regulation of only *municipal* employees' activities in order to further the efficiency of governmental operations. *Kane v. City of Albuquerque*, 2015-NMSC-027, ¶ 52, 358 P.3d 249 (emphasis added).

**{17}** Like the statutes at issue in *Public Service Commission* and *NMFE*, the NMFA applies to and thereby affects all New Mexicans. *See* § 31-27-2(A)(6) (explaining that the NMFA is intended to ensure that "only criminal forfeiture is allowed in this state," i.e. *statewide*). The Legislature intended that the extinguishment of civil forfeiture and the existence of specific procedures for only criminal forfeiture proceedings apply across the state. *See* § 31-27-2(A)(1) (explaining that one purpose of the NMFA is to "*make uniform* the standards and procedures for the seizure and forfeiture of property" (emphasis added)). Both its protective and punitive aspects are intended to apply to all persons in New Mexico. *See* Section 31-27-2(B)(1) (making the NMFA applicable to all "seizures, forfeitures, and dispositions of property subject to forfeiture"); § 31-27-2(A)(2) (recognizing that the NMFA is intended to protect the rights of persons whose property is subject to forfeiture and of innocent owners holding interests in property subject to forfeiture, not only to target and thereby deter the conduct of those engaged in criminal activity). We, therefore, conclude that the NMFA is a general law because it applies generally throughout the state, relates to a matter of statewide concern, and impacts everyone across the entire state.

**The NMFA Expressly Denies Home-Rule Municipalities Authority to Enforce Civil Asset Forfeiture Proceedings**

**{18}** Having concluded that the NMFA is a general law, we next consider whether it "expressly denies" the City the authority to maintain and enforce the

10

Ordinance. *Kane*, 2015-NMSC-027, ¶ 49. While earlier cases construing the phrase "not expressly denied," N.M. Const. art. X, § 6(D), required the statute to contain "some *express statement* of the authority or power denied[,]" *Apodaca*, 1974-NMSC-071, ¶ 16 (emphasis added), our Supreme Court more recently has rejected the argument that Article X, Section 6(D) "allows a municipality to disregard an express law of the Legislature unless the law specifically states 'and no municipality may do otherwise.' " *Casuse*, 1987-NMSC-112, ¶ 6. Rather, any general law "that clearly intends to preempt a governmental area should be sufficient without necessarily stating that affected municipalities must comply and cannot operate to the contrary."*Id.*. "[A] negation of the power *in haec verba* is not necessary; words or expressions which are tantamount or equivalent to such a negation are equally effective." *Haynes*, 1992-NMSC-062, ¶ 22. Specifically, we are to look to the "explicitly articulated purposes" of the general law, if enumerated, and in light of the purposes of the general law, determine whether the local law would circumvent and thereby frustrate Legislative intent in enacting the statute. *ACLU v. City of Albuquerque*, 1999-NMSC-044, ¶ 13, 128 N.M. 315, 992 P.2d 866; *see City of Albuquerque v. N.M. Pub. Regulation Comm'n*, 2003-NMSC-028, ¶ 7, 134 N.M. 472, 79 P.3d 297 ("Local governments also cannot use . . . their home[-]rule power to frustrate or violate established public policy."). The question, then, is one of legislative intent. *See NMFE*, 2006-NMCA-007, ¶ 19 (describing the analysis as an inquiry into (1) whether the general law evinces an intent to

11

negate municipal power, (2) whether there is a clear intent to preempt the governmental area from municipal policymaking, and (3) whether municipal authority to act would be "so inconsistent" with the general law that the general law "is the equivalent of an express denial"); *see also Prot. & Advocacy Sys.*, 2008-NMCA-149, ¶ 61 ("When considering preemption, we must, above all, follow our Legislature's intent[.]").

{19}  We begin by examining the clearest expression of the Legislature's intent when enacting a statute: the expressly stated purposes of the NMFA. *See Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153 (explaining that the plain meaning rule requires a court to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous); *see also ACLU*, 1999-NMSC-044, ¶ 11 (holding that the Children's Code preempted the City's curfew ordinance, citing first to and relying heavily upon the Legislature's stated purpose within the Children's Code). The Legislature specifically enumerated the purposes of the NMFA. *See* § 31-27-2(A). Importantly, the Legislature intended to "ensure that *only* criminal forfeiture is allowed in this state." Section 31-27-2(A)(6) (emphasis added). Additionally, the NMFA is meant to "*make uniform* the standards and procedures for the seizure and forfeiture of property subject to forfeiture." Section 31-27-2(A)(1) (emphasis added). While the language of the NMFA does not prohibit municipalities from enacting and enforcing criminal forfeiture proceedings, it restricts forfeiture to criminal

12

proceedings, and imposes specific requirements on any criminal forfeiture proceedings that must comport with the provisions of the NMFA. *See id.* The Ordinance, however, allows the City to accomplish precisely what the Legislature intended the NMFA to eliminate: *civil* forfeiture. *City of Albuquerque ex rel. Albuquerque Police Dep't v. One (1) 1984 White Chevy*, 2002-NMSC-014, ¶¶ 1, 4, 132 N.M. 187, 46 P.3d 94 (describing the ordinance as a civil forfeiture proceeding).

**{20}** In several specific ways, the procedures of the Ordinance for seizing and forfeiting a person's property are at odds with the procedures set forth in the NMFA. First, the NMFA requires the person to be convicted of the criminal offense to which the property is tied before that property becomes potentially subject to forfeiture. See § 31-27-4(A) (providing that a person's property is subject to forfeiture if the person "was arrested for an offense to which forfeiture applies[,]" and "the person is convicted by a criminal court of the offense"); § 31-27-5(A) (requiring that the state, within thirty days of seizing the property or filing a related criminal indictment, file a complaint of ancillary forfeiture proceedings or return the property to the person from whom it was seized). The Ordinance, on the other hand, allows for forfeiture of property upon a person's arrest—before conviction—for a criminal offense. *See* Albuquerque, N.M., Rev. Ordinance §§ 7-6-2, -5(B) (providing that a vehicle is subject to "immediate seizure and forfeiture" if "seizure is incident to an arrest of the driver"). Nothing in the Ordinance requires

that the person be convicted of DWI or driving on a revoked or suspended license as a result of a DWI before the officer seizes and subjects the vehicle to forfeiture, or that criminal proceedings occur contemporaneous with the City's effort to forfeit the vehicle.

{21}    Second, the NMFA carefully sets out the procedure for replevin hearings— initiatory proceedings at which an individual who claims an interest in the property seized can seek its return prior to the resolution of the related criminal matter—*see* § 31-27-4.1, whereas the Ordinance specifically states that seized vehicles "shall not be subject to replevin," but are "deemed to be in the custody of the [p]olice [d]epartment." Albuquerque, N.M., Rev. Ordinance § 7-6-5(C).

{22}    Third, the NMFA places the burden on the *state* to prove that the property owner "had actual knowledge that the property was subject to forfeiture" because of its use in the course of criminal activity. Section 31-27-7.1(F)(1). This is in stark contrast to the Ordinance, which places the burden of proof on the *owner of the property* to prove that he or she "could not have reasonably anticipated that the vehicle could be used in a manner constituting" a public nuisance. Albuquerque, N.M., Rev. Ordinance § 7-6-7(A).[1] Beyond that, the NMFA calls for a different burden of proof than the Ordinance. *See* § 31-27-7.1(F)(1) (proving by clear and

---

[1] The provision of the Ordinance requiring owners of seized property to prove their innocence was recently found to be an unconstitutional procedural due process violation. *See Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163, 1210 (D.N.M. 2018), *modified on reconsideration by* 326 F. Supp. 3d 1145 (D.N.M. 2018).

14

convincing evidence); Albuquerque, N.M., Rev. Ordinance § 7-6-7(A) (demonstrating preponderance of evidence).

{23} Finally, as another example, the NMFA provides the person whose property is subject to forfeiture an opportunity to contest the conclusion of the proceeding. At the close of a forfeiture proceeding conducted in accordance with the procedures of the NMFA, the person whose property was forfeited may petition the court to determine whether the forfeiture was "unconstitutionally excessive" and "grossly disproportional to the seriousness of the criminal offense for which the person was convicted" in light of several factors, including the impact of the crime on the community and the sentence imposed for the commission of the crime. Section 31-27-6(K), (L), (M). Under the Ordinance, there exists no means for the person to contest the conclusions drawn at the close of the probable cause hearing, nor does the Ordinance provide the presiding official any discretion to consider whether forfeiture is a proportionate response to the factual nuances of the circumstances presented, critically, the seriousness of the crime. Rather, at the close of the "informal" hearing where it is determined that the seizure was supported by probable cause, "proceedings for an order for forfeiture shall be instituted promptly." Albuquerque, N.M., Rev. Ordinance § 7-6-5(D).

{24} The Ordinance and the NMFA are functionally at odds with one another. The NMFA constrains the circumstances under which a person's property may be subject to permanent forfeiture, for example, by requiring conviction (not merely

15

arrest) prior to the initiation of forfeiture proceedings, by allowing persons to seek replevin, by shifting the burden of proof to the state, by heightening the burden of proof before the court can conclude that the property is subject to forfeiture, and by allowing the person to petition the court to determine whether a finding of forfeiture was unconstitutionally excessive. The Ordinance, however, simply—and far more strictly—deems the property associated with the named conduct forfeitable without further consideration. *See* Albuquerque, N.M., Rev. Ordinance § 7-6-2 (providing that a motor vehicle operated under the described circumstances "is hereby declared to be a nuisance and subject to immediate seizure and forfeiture"). Such a per se approach to seizing and forfeiting property owned by individuals is wholly contrary to the language and spirit of the NMFA. Thus, because the Legislature intended to eliminate civil forfeiture and the Ordinance allows for it, and because the procedures set forth in the Ordinance are different from and contrary to the procedures outlined in the NMFA, we conclude that the Ordinance is so inconsistent with the terms of the NMFA that the NMFA is the equivalent of an express denial of the City's authority to enforce the Ordinance.

{25}     We find further support for our analysis of the NMFA's purposes and provisions in our case law. In *ACLU*, 1999-NMSC-044, ¶¶ 13,15, for example, the Delinquency Act was found to have "comprehensively" and "exhaustively" addressed the conduct and behavior of children that could be described as criminal, thus a local ordinance providing criminal penalties for curfew violations conflicted

16

with and was preempted by the state law. By contrast, *NMFE*, 2006-NMCA-007, ¶ 20, held that the Minimum Wage Act did not preempt a city ordinance setting the minimum wage higher than that in the statute because "unlike the situation in *ACLU*, [the] state law does not establish any type of comprehensive wage-setting program or scheme and the Minimum Wage Act does not exhaustively address the subject of minimum wages."

**{26}** Like the general law at issue in *ACLU*, the NMFA comprehensively addresses asset forfeiture by expressly limiting the circumstances under which such proceedings may occur—namely, only in the criminal context—and by detailing each step of the seizure and forfeiture process. It sets forth specific procedures for each step of the process, including (1) when an order to seize potentially forfeitable property may be issued, Section 31-27-4; (2) what documentation of receipt of property the property owner must receive following seizure, Section 31-27-4.1(A); (3) under what circumstances a party may move the court to issue a writ of replevin and what responsive pleadings are permitted, Section 31-27-4.1(B),(C); (4) the timing and form of the complaint for the state to initiate a permanent forfeiture of property, as well as the requirements for service of process, Section 31-27-5; (5) the mechanisms available for persons who claim an interest in seized and forfeited property and the rules of procedure and burdens of proof to be applied in the forfeiture proceeding along with the option to appeal the district court's decision following the proceeding, Section 31-27-6; and (6) the

17

disposition of forfeited property and depositing of proceeds from the sale of forfeited property into the state's general fund, Section 31-27-7. As in *ACLU*, we conclude that the Legislature, through these extensive, detailed, and comprehensive provisions has "exhaustively addresse[d]" the existence and manner of enacting and enforcing asset forfeiture proceedings. *ACLU*, 1999-NMSC-049, ¶ 15.

**The NMFA Does Not Operate as an "Opt-In" Statute as the City Argues**

{27}    Finally, we address the City's argument. The City relies upon Section 31-27-2(B)(1) of the NMFA and argues that the Ordinance does not conflict with and therefore cannot be preempted by the NMFA because "the Legislature allowed municipalities the decision to opt-in to the [NMFA]." Section 31-27-2(B)(1) states: The NMFA "applies to seizures, forfeitures and dispositions of property subject to forfeiture pursuant to laws that specifically apply the [NMFA.]" Because the Ordinance does not contain language expressly providing that the NMFA applies, the City maintains that the NMFA cannot preempt the Ordinance.

{28}    We disagree, based first upon the fact that the City's interpretation of Section 31-27-2(B)(1) subverts the NMFA's clearly stated purpose, that is, to ensure that only criminal forfeiture exists in New Mexico. Under the City's interpretation, a municipality wishing to enact a civil forfeiture law could entirely avoid the NMFA and the stated rationale that underpins it, along with all of its requirements concerning forfeiture proceedings by simply not mentioning the

18

NMFA in a given ordinance and in so doing, allow non-criminal asset forfeiture—such as that embodied by the City's Ordinance—to continue from municipality to municipality.

{29} Second, whether the NMFA only applies to statutes "that specifically apply the [NMFA]", as the City interprets Section 31-27-2(B)(1), is an issue separate and distinct from preemption. We view the related language to mean that the Legislature may, in another statute, provide that the NMFA applies to the statute in order to incorporate its procedures and penalties into the substance of the statute. *See, e.g.*, NMSA 1978, § 60-7A-5(C) (2002) (penalizing the unlawful manufacture or sale of alcoholic beverages or any money "that is the fruit or instrumentality" of such by subjecting it to forfeiture and providing that "the provisions of the [NMFA] apply to the seizure, forfeiture[,] and disposal of such property); NMSA 1978, § 17-2-20.1(A), (C) (2002) (providing that "[t]he provisions of the [NMFA] apply to the seizure, forfeiture and disposal of property" when "used as instrumentalities in the commission of" possessing, taking, or attempting to take big game during closed season). The latter concept—preemption—is an issue that arises *any* time two governing bodies attempt to regulate the same subject matter. The inferior of the two governing bodies, the local government, cannot exempt itself from the application of the sovereign's laws. *See Casuse* 1987-NMSC-112, ¶ 6 ("It is commonly recognized that a sovereign and its subdivision may tax the same activity without causing an inconsistency in the law. However, when two

19

statutes that are governmental or regulatory in nature conflict, the law of the sovereign controls."). Where a municipality's ordinance interferes with a general law, the general law, i.e. the law of the sovereign, preempts that of its subdivision, regardless of whether the language of the municipality's ordinance acknowledges the existence of the laws of the sovereign.

{30}     Finally, if the City is correct that the statute only applies to cities that include in their ordinances such similar words as "and the NMFA applies," courts would be precluded from engaging in a preemption analysis at all for any statute with a provision similar to Section 31-27-2(B)(1). As previously described, the analysis for determining whether a law is a general law requires us to examine the effect of a legislative enactment—whether it affects all of the inhabitants of the state and is therefore of statewide concern, or whether it affects only the inhabitants of the municipality and is therefore of only local concern. *Haynes*, 1992-NMSC-062, ¶ 19. Under the City's view, it is the local government that determines which of the sovereign's laws are general. If true, a municipality could simply assert that the law is not of statewide concern because it does not apply to all municipalities by the very terms of the municipality's own ordinances. Where local governments are able to decide which statutes of the sovereign apply to them based upon the wishes of local officials and the language of a local ordinance, local governments can evade a determination that an otherwise restrictive statute is a general law. We find it quite unlikely that the Legislature would empower an inferior governmental

20

body with the capacity to decide which statutes are general laws and which are not. The City's argument turns the interaction between sovereigns and the subdivisions that exist within them completely on its head.

**{31}** We conclude that the NMFA denies the City's authority to seize and forfeit property under the Ordinance because the enforcement of the Ordinance frustrates, and, in fact, completely contradicts the Legislature's intent in amending the NMFA. Thus, the NMFA preempts the Ordinance in its entirety.

**CONCLUSION**

**{32}** We conclude that the NMFA preempts the Ordinance and reverse the judgment and order of the district court.

**{33}** **IT IS SO ORDERED.**


_____
**STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____
**HENRY M. BOHNHOFF, Judge**